IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-CV-411-RJ

BOBBIE SUE KENNEDY,

              Plaintiff/Claimant,

v.

              O R D E R

ANDREW SAUL,
 Commissioner of Social Security,

              Defendant.

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-24, -26] pursuant to Fed. R. Civ. P. 12(c). Claimant Bobbie Sue Kennedy ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on December 12, 2013, alleging disability beginning August 25, 2008. (R. 15, 283–84). Her claims were approved initially with an established onset date of April 14, 2014. (R. 15, 126–49). Claimant appealed the decision based on the onset date. (R. 15, 190–93). Upon reconsideration, she was

determined to be not disabled and denied all benefits. (R. 15, 150–77). A hearing before the Administrative Law Judge ("ALJ") was held on July 31, 2017, at which Claimant, represented by counsel; a witness; and a vocational expert ("VE") appeared and testified. (R. 15, 51–125). On October 24, 2017, the ALJ issued a decision denying Claimant's request for benefits. (R. 12–50). On June 19, 2018, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her

2

findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the ALJ erred in weighing the medical opinions and formulating the RFC. Pl.'s Mem. [DE-25] at 7–19.

3

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had engaged in substantial gainful employment from August 2008 to April 2009, but there had been a continuous twelve-month period during which she did not engage in substantial gainful activity. (R. 18). Next, the ALJ determined Claimant had the following severe impairments: residual effects of left knee surgeries, bursitis, degenerative disc disease, lumbar radiculopathy, lumbar facet arthropathy, migraines, headaches, fibromyalgia, chronic pain syndrome, depressive disorder, bipolar disorder, anxiety disorder, panic disorder, personality disorder, and posttraumatic stress disorder ("PTSD"). *Id.* The ALJ also found Claimant had nonsevere impairments of asthma, carpal tunnel syndrome, costochondritis, esophageal reflux, hemorrhoids, osteopenia, vitamin D deficiency, scoliosis, sinusitis, rhinitis, herpes zoster, fibrocystic breast disease, and obsessive compulsive disorder. (R. 19–21). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 21–24). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] requiring the following limitations: occasionally climb ramps

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work,

4

and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; frequently reach, reach overhead, handle objects, and finger bilaterally; no exposure to very loud noise; occasional exposure to loud noise; occasional exposure to pulmonary irritants such as dust, odors, fumes, and gases and to poorly ventilated areas; occasional exposure to unprotected heights, hazardous machinery, or hazardous moving mechanical tasks; simple, routine, and repetitive tasks but not at a production rate pace; simple work-related decisions; occasional interaction with the public, coworkers, and supervisors; and being off task no more than ten percent of an eight-hour workday in addition to normal work breaks. (R. 24–40). In making this assessment, the ALJ found Claimant's statements about the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical and other evidence. (R. 27).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a cashier checker, telephone operator, or benefits clerk. (R. 40–41). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 41–42).

## V. DISCUSSION

### A. The ALJ erred in weighing the opinion evidence.

Claimant contends the ALJ erred in weighing several medical opinions. Pl.'s Mem. [DE-25] at 7–19. When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c).[2] In general, the ALJ should give more weight to the opinion of an

---

unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b).

[2] The rules for evaluating opinion evidence for claims filed after March 27, 2017 are found in 20 C.F.R. § 404.1520c,

examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 404.1527(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig,* 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart,* 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart,* No. 2:05-CV-46, 2006 WL 2565245, at \*8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin,* No. 7:12-CV-104-D, 2013 WL 5350870, at \*2 (E.D.N.C. Sept. 24, 2013) (citations omitted). However, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has

but 20 C.F.R. § 404.1527 still applies in this case.

6

failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)).

### 1. Dr. Mukesh Kamdar's 2009 opinions

In May 2009, Dr. Kamdar examined Claimant and opined, "At this point I do not believe she can function in any useful capacity in her current job." (R. 1428). In August 2009, he wrote, "She is still not capable of returning to work due to her significant depressed affect and mood as well as the fact that she has extremely hard time concentrating. She also now has very poor frustration tolerance." (R. 1431). The ALJ gave those opinions partial weight because Dr. Kamdar "only addressed her functioning at her current job, not any work." (R. 38). The court can trace the ALJ's reasoning; Dr. Kamdar spoke to Claimant's ability to return to the specific job she held in 2009, and he did not opine on her ability to perform any work, so it was logical for the ALJ to give those opinions partial weight in his disability determination.

### 2. Dr. Kamdar's 2013 and 2014 opinions

In November 2013, Dr. Kamdar completed a check-box medical source statement. (R. 670–76). He indicated that Claimant was mildly limited in the ability to remember locations and work-like procedures; the ability to understand, remember, and carry out short and simple instructions; the ability to ask simple questions or request assistance; the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; and the ability to be aware of normal hazards and take appropriate precautions. *Id.* Dr. Kamdar indicated that Claimant is moderately limited in the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual; the ability

7

to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being unduly distracted by them; the ability to make simple work-related decisions; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; the ability to respond appropriately to changes in the work setting; the ability to travel in unfamiliar places or use public transportation; and the ability to set realistic goals or to make plans independently of others. *Id.* Dr. Kamdar indicated that Claimant was markedly limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* Dr. Kamdar noted that Claimant has a substantial loss of ability to respond appropriately to supervision, co-workers, and usual work situations and to deal with changes in a routine work setting. (R. 672). He opined that the date of onset of the limitations was March 25, 2008. (R. 673). He wrote that Claimant was diagnosed with unipolar depression, bipolar disorder, and severe anxiety disorder, and she also suffers from chronic pain syndrome. *Id.*

In April 2014, Dr. Kamdar wrote a letter in which he opined that Claimant met a Listing. (R. 674). He summarized her treatment since 2008 and concluded, "Her prognosis is very guarded and in my opinion, due to her disabling symptoms of Bipolar Disorder, she is not capable of gainful employment." (R. 675–76).

The ALJ did not differentiate between Dr. Kamdar's 2013 opinion and his 2014 opinion; rather, the ALJ discussed them together. (R. 38–39). The ALJ gave three reasons for affording the opinions partial weight. *Id.* First, the ALJ stated, "The ultimate issue of determining disability is a finding reserved for the SSA Commissioner." (R. 39). With respect to the 2014 opinion, that

8

reason was adequate. Dr. Kamdar stated in April 2014 that Claimant met a Listing and that she was not capable of gainful employment, and those issues are reserved to the Commissioner. *See* S.S.R. 96-5p, 1996 WL 374183, at *5 (July 2, 1996) ("The judgment regarding the extent to which an individual is able to perform exertional ranges of work goes beyond medical judgment regarding what an individual can still do and is a finding that may be dispositive of the issue of disability. . . . [T]he overall RFC assessment is an administrative finding on an issue reserved to the Commissioner.").

However, in the 2013 opinion, it does not appear that Dr. Kamdar opined on an issue reserved to the Commissioner, such as Claimant's ability to perform an exertional range of work or her overall RFC assessment. *See id.* Dr. Kamdar's 2013 opinion does not contain a statement about whether Claimant is capable of gainful employment. (R. 670–73). It is unclear which part of Dr. Kamdar's 2013 opinion consists of a finding reserved for the Commissioner. There is no accurate and logical bridge from the opinion to the ALJ's conclusion that Dr. Kamdar opined on an issue reserved to the Commissioner; accordingly, the ALJ's first stated reason for discounting the 2013 opinion is inadequate.

The ALJ's second reason for discounting Dr. Kamdar's opinions is that they are "inconsistent with the fact that the claimant was able to work for over a year after March 2008," and the ALJ cited Claimant's hearing testimony. (R. 39). In 2013, Dr. Kamdar opined that Claimant's limitations existed at the assessed severity since March 25, 2008, and she had, among other limitations, a marked limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. (R. 671). At the hearing, Claimant testified that she worked through April 21, 2009. (R. 68–69). When the ALJ asked about her alleged onset date of August 25, 2008, Claimant responded, "That was when Dr. Kamdar felt, I

9

guess in his professional opinion, that I met the criteria for disability but I still, you know, I still attempted to work and I consistently had problems with my depression and anxiety and eventually escalated to the point that I could no longer work." (R. 70). Claimant testified that she had short term disability, and then she received long term disability, which ended in 2010. *Id.*

The ALJ concluded that Dr. Kamdar's opinions were inconsistent with Claimant's testimony that she could work after March 2008; however, Claimant actually testified that she *attempted* to work, consistently had problems, and obtained short term and then long term disability. Claimant's testimony does not appear to be inconsistent with Dr. Kamdar's opinion. The ALJ failed to build an accurate and logical bridge from the opinion and Claimant's testimony to the ALJ's conclusion that they are inconsistent. Accordingly, the ALJ's second reason for discounting Dr. Kamdar's opinions is inadequate.

The ALJ's third stated reason for discounting the opinions was that they were "not completely consistent with the mental status examinations at the time and his own treatment notes." (R. 39). However, the ALJ does not explain how the opinions are inconsistent with Dr. Kamdar's examinations and notes. *See Monroe v. Colvin*, 826 F.3d 176, 191 (4th Cir. 2016) (finding error when the ALJ made a conclusory statement that "the claimant's treatment history did not support the consultative examiner's findings" and failed to explain further). In August 2013, three months before Dr. Kamdar wrote the 2013 medical source statement, he evaluated Claimant, and his objective findings indicated that she had a very needy attitude, soft and at times circumstantial and over productive speech, depressed and anxious mood, sad affect, passive suicidal ideations, and impaired short term memory. (R. 820). In the subjective findings, Dr. Kamdar indicated that Claimant "is extremely depressed," and "[t]here are days when she does not want to get [out] of the bed and does not take shower f[o]r days." *Id.* She reported to Dr. Kamdar that "she has no

10

energy or drive to do anything," she has panic attacks, and she has significant anticipatory anxiety. *Id.* Dr. Kamdar's assessment was that Claimant had depressed bipolar disorder and generalized anxiety disorder. *Id.* In September 2013, two months before Dr. Kamdar issued his opinion, he noted that Claimant had improved after switching medications, but she reported that her fibromyalgia was worse, such that she "can hardly get out of bed." (R. 822). She had a pleasant and calm attitude, slow psychomotor activity, apprehensive mood, and sad affect. *Id.* Dr. Kamdar's assessment was that Claimant had mood disorder NOS variously diagnosed as unipolar depression to bipolar II disorder, and she presented with chronic depression and anxiety. (R. 823).

It is unclear how Dr. Kamdar's treatment notes were inconsistent with his 2013 opinion. Dr. Kamdar indicated that Claimant was mildly limited in six activities, moderately limited in thirteen activities, and markedly limited in one activity. (R. 670–73). He summarized Claimant's diagnoses and concluded that she is more than likely suffering from bipolar disorder. (R. 673). His opinion appears to be consistent with his 2013 examinations of Claimant, including her subjective reports, his objective findings, and his diagnoses. Moreover, the 2014 opinion summarizes Claimant's treatment history and states her diagnoses. It is likewise unclear how the 2014 opinion is inconsistent with Dr. Kamdar's examination notes. The court cannot trace the ALJ's reasoning, so the ALJ's third stated reason is inadequate with respect to both opinions. *See Weiss v. Berryhill*, No. 5:17-CV-556-FL, 2019 WL 1244700, at \*4 (E.D.N.C. Mar. 18, 2019) (because the ALJ did not explain how a treating provider's opinion was inconsistent with the evidence, "the court is unable to engage in meaningful judicial review of the ALJ's decision not to afford [the] opinion controlling weight.").

In summary, the ALJ offered three reasons for discounting Dr. Kamdar's 2013 and 2014 opinions: Dr. Kamdar opined on an issue reserved to the Commissioner, his opinions were

11

inconsistent with Claimant's testimony regarding her ability to work after March 2008, and his opinions were inconsistent with his examination notes. (R. 39). None of the stated reasons was adequate to discount the 2013 opinion, and only the first stated reason was logical with respect to the 2014 opinion. Remand is appropriate for the ALJ to re-weigh the opinions and explain his reasoning in greater detail. *See Weiss*, 2019 WL 1244700, at *4; *Gregory v. Berryhill*, No. 5:16-CV-00284-FL, 2017 WL 4171969, at *6 n.6 (E.D.N.C. Sept. 20, 2017). In particular, the fact that the ALJ discounted the opinions of Claimant's treating providers but gave greater weight to non-examining sources requires further discussion. *See* 20 C.F.R. § 404.1527(c)(2); *Woods v. Berryhill*, 888 F.3d 686, 695 (4th Cir. 2018); *Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017) (finding error where "the ALJ's rejection of Lewis' treating physician sources is perfunctory").

### 3. Dr. Kamdar's 2015 and 2017 opinions

In June 2015, Dr. Kamdar wrote a letter explaining that Claimant's "bipolar disorder has relapsed, characterized by severe depressive episodes, suicidal thoughts, anxiety, panic attacks and decline in personal hygiene and overall self care. She is on the verge of being hospitalized at a psychiatric facility." (R. 870). Dr. Kamdar also wrote, "She is unable to carry out the normal activities of daily living due to her underlying condition and is certainly not capable of any form of gainful employment due to the severity of her mood disorder." *Id.* In July 2017, Dr. Kamdar wrote a second letter stating that Claimant was hospitalized in August 2015 "for a serious suicide attempt." (R. 1471). He wrote: "She continues to manifest debilitating symptoms of depression, has severe anxiety and is not in any way capable of gainful employment. I believe, unfortunately, for this young lady, she has reached maximum improvement in her psychiatric condition and is considered permanently disabled from a clinical standpoint." *Id.* Also in July 2017, Dr. Kamdar re-signed his 2013 opinion and added at the bottom of the page, "No significant change . . . in fact

12

she now has additional psychological stressors." (R. 1475).

The ALJ stated that he discounted the 2015 and 2017 opinions because "the ultimate issue of determining disability is a finding reserved for the SSA Commissioner" and "these letters were completed well after the claimant's date last insured." (R. 39). Like the 2014 opinion, and unlike the 2013 opinion, the 2015 and 2017 opinions do contain conclusions about whether Claimant is capable of gainful employment. (R. 870, 1471). That is an issue reserved to the Commissioner. *See* S.S.R. 96-5p, 1996 WL 374183, at \*5 (July 2, 1996). The ALJ thereby gave one adequate reason for discounting the opinions.

The ALJ also stated that the letters were completed well after Claimant's date last insured. She was last insured on December 31, 2014. (R. 18). The 2015 letter was written on June 2, 2015, so it was completed approximately five months after Claimant's date last insured. (R. 870). A five-month difference likely does not render the opinion irrelevant, particularly because Dr. Kamdar summarized Claimant's treatment since 2008 in the 2015 letter. *See e.g., Cunningham v. Berryhill*, No. 5:17-CV-301-FL, 2019 WL 6731380, at \* 4 (E.D.N.C. Nov. 19, 2018) (holding that the ALJ erred in failing to consider a medical opinion even though the opinion was issued six months prior to the alleged onset date) (citations omitted), *adopted by*, 2018 WL 6729784 (E.D.N.C. Dec. 21, 2018). On remand, further explanation of the weight afforded to the 2015 and 2017 opinions is required.

### 4. Dr. E.J. Burgess

In May 2014, Tara Luellen, M.A. LPA evaluated Claimant, and Dr. Burgess signed her report. (R. 677–82). Ms. Luellen and Dr. Burgess concluded:

> Overall, Ms. Kennedy was able to understand, retain, and follow instructions and sustain her attention to perform simple tasks. However, she did so slowly, and this was believed to be due to her mental health problems. Because of her diagnoses,

she had some difficulty relating to the examiner, and she may have some difficulty relating to others in a work environment. Based on her current presentation, it does not appear that she would be capable of tolerating the stress and pressure associated with day-to-day work activities.

(R. 682). The ALJ gave the opinion partial weight because it "was based on a single examination of the claimant and is vague in part. While his opinion is mostly supported by his examination, it is not completely supported by the longitudinal medical evidence of record." (R. 39).

First, the ALJ discounted the opinion because it was based on a single examination. *Id.* Generally, more weight is given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. 20 C.F.R. § 404.1527(c)(2). Because Ms. Luellen and Dr. Burgess were consultative examiners who saw Claimant once and not treating providers, it was appropriate for the ALJ to discount their opinion.

Second, the ALJ discounted the opinion because it was vague in part, but the ALJ did not specify which part of the opinion is vague. (R. 39). The opinion consists of six single-spaced typed pages of prose. It is not a check-box form. It describes the examiner's general observations; Claimant's present illness; her personal, family, and social history; her daily activities and functioning; her mental health history; her medical, legal, and military history; her mental status exam; her cognition; the examiner's diagnostic impression; and the examiner's conclusions. (R. 677–82). It is not obvious which part of the opinion is vague, and because the ALJ did not explain his conclusion, it is impossible for the court to trace the ALJ's reasoning. Accordingly, the ALJ's second stated reason for discounting the opinion is inadequate.

Third, the ALJ discounted the opinion because it was not supported by the longitudinal medical evidence of record. (R. 39). Again, the ALJ does not go into further detail, and it is not

14

obvious to the court that the opinion is inconsistent with Claimant's other medical evidence. The ALJ's third stated reason is therefore inadequate.

Nonetheless, the ALJ offered one sufficient reason to discount the opinion—Ms. Luellen and Dr. Burgess were consultative examiners, not treating providers. On remand, the ALJ should re-weigh the opinion and explain in more detail how the opinion is vague and how it is not supported by the record.

### 5. Dr. Sandy Kimmel

In May 2014, Dr. Kimmel evaluated Claimant. (R. 684–86). She concluded that Claimant's chronic lower back pain "limits her from standing more than 10 minutes, walking more than 20 minutes, lifting over 10 pounds, [and] sitting about an hour with heat." (R. 686). The ALJ gave the opinion partial weight because the "limitations are too restrictive given [Dr. Kimmel's] own examination and the medical evidence of record. They also appear to be based mostly on the claimant's self-reported limitations, not on objective medical findings." (R. 40).

Dr. Kimmel's own examination showed that Claimant's "[m]otor strength is 5/5 in bilateral upper and lower extremities, normal tone." (R. 686). Claimant had intact coordination and a normal gait; she was "able to walk on heels and toes," but "[t]andem was mildly impaired." *Id.* Claimant "had normal lumbar range of motion, but complained of more pain with forward bending." *Id.* She had "elevated right PSIS forward bending," "a significant right lumbar spasm," "mild curvature of the lumbar spine," "spinous tenderness," and tender points in multiple areas. *Id.* Dr. Kimmel noted that Claimant "requires no assistance to ambulate." *Id.*

The ALJ's reason for giving the opinion partial weight is that the limitations are too restrictive given Dr. Kimmel's examination. (R. 40). Dr. Kimmel noted that Claimant had 5/5 motor strength in her upper and lower extremities and normal tone, but she concluded that

15

Claimant cannot lift more than ten pounds. (R. 686). Additionally, Dr. Kimmel noted that Claimant had a normal gait, could walk on heels and toes, and required no assistance to ambulate, but Dr. Kimmel limited her from standing more than ten minutes or walking more than twenty minutes. (R. 686). The court can trace the ALJ's reasoning with respect to his stated reason for discounting Dr. Kimmel's opinion. Accordingly, the ALJ did not err in weighing the opinion.

### 6. The state agency medical opinions

Fourth, Claimant contends that the state agency medical opinions could not constitute substantial evidence to support the ALJ's decision because they were not well-supported by the record. Pl.'s Mem. [DE-25] at 17–19. Generally, more weight is given to treating providers than non-examining or consultative medical sources. 20 C.F.R. § 404.1527(c). Here, the ALJ gave substantial weight to the opinions of Dr. Sharon Skoll and Dr. Hari Kuncha because they were consistent with the record. (R. 36–37).

Claimant contends that Dr. Skoll's opinion is not consistent with the record because Dr. Skoll barely mentioned a manic episode in May 2014 and attributed Claimant's more depressed state in August 2014 to her failure to take medications. Pl.'s Mem. [DE-25] at 17–18. However, Dr. Skoll did mention and consider the 2014 manic episode, therefore her opinion is not inconsistent with the record in that regard. (R. 165). Additionally, Dr. Skoll does not attribute Claimant's more depressed state to a failure to take medications; Dr. Skoll wrote, "An exam dated 08/12/14 indicates the [claimant] stopped taking her Depakote on her own and was feeling more depressed." *Id.* Dr. Kamdar's notes from that August 12, 2014 appointment state, "She has stopped taking Depakote on her own. Reports feeling more depressed and her chronic pain has also been worse." (R. 833). Dr. Skoll therefore accurately summarized Dr. Kamdar's notes, and Dr. Skoll does not opine that Claimant's failure to take Depakote *caused* her to feel more depressed.

16

Dr. Skoll's summation of Dr. Kamdar's notes is accurate, and her opinion is therefore not inconsistent with the record.

Claimant contends that Dr. Kuncha's opinion was not consistent with the record because Dr. Kuncha noted that Claimant was improving, but in fact, Claimant's improvements as noted by the Cary Pain Center were only temporary. Pl.'s Mem. [DE-25] at 18. Dr. Kuncha stated, "The most recent exam with [Cary Pain] shows the [claimant] reporting lumbar medial branch block had helped her best and would like to continue." (R. 170). Dr. Kuncha's opinion was written in June 2015, and Claimant's latest appointment at Cary Pain Center in the record appears to be January 9, 2015. (R. 848). At that appointment, Claimant did report that "lumbar medial branch block had helped her best and would like to continue the treatment. No new complaints." *Id.* Dr. Kuncha's summary of the Cary Pain Center record is accurate, and his opinion is not inconsistent with the record. Claimant also references a December 26, 2014 clinic note from Cary Pain Center where Claimant reported that she still had significant low back pain and that injections only provided relief for two to three weeks, but that appointment was not "the most recent exam" that Dr. Kuncha referenced. (R. 850). Dr. Kuncha accurately summarized the January 9, 2015 clinic note, therefore his opinion is not inconsistent with the record, and the ALJ did not err in weighing the opinion.

**B.     The ALJ's summary of his rationale for the RFC**

Claimant raises three issues with the ALJ's summary of his reasoning found on page forty of the record: (1) the ALJ noted Claimant's lack of inpatient psychiatric care, (2) the ALJ noted that Claimant did not always take her medication as prescribed and failed to follow up with physical therapy, and (3) the ALJ considered the types of Claimant's daily activities but not the extent to which she performs them. Pl.'s Mem. [DE-25] at 15–19.

17

First, Claimant contends that the ALJ "criticizes" her lack of inpatient psychiatric care, and there is "no legal requirement that psychiatric hospitalization is a prerequisite for disabling mental health symptoms." *Id.* at 15. The ALJ mentions the lack of inpatient psychiatric care in the first sentence of his summary paragraph; he wrote, "In sum, the above residual functional capacity assessment is supported by the longitudinal medical record, to include the lack of inpatient psychiatric care prior to the date last insured, the relative control of claimant's symptoms with treatment and medication, the claimant's statements, the medical opinions, and the claimant's presentation on examinations." (R. 40). In context, the ALJ did not criticize Claimant's lack of inpatient psychiatric care or state that it was a prerequisite for a finding of disability; rather, the ALJ offered it as one reason among many for his RFC assessment. The ALJ's formulation of the RFC may appropriately be based in part on a conservative course of treatment, including a lack of inpatient treatment. *See Dunn v. Colvin*, 607 F. App'x 264, 275 (4th Cir. 2015) ("[I]f all that the claimant needs is conservative treatment, it is reasonable for an ALJ to find that the alleged disability is not as bad as the claimant says that it is."); *Richardson v. Colvin*, No. 4:14-CV-125-FL, 2015 WL 5725546, at *6 (E.D.N.C. Aug. 11, 2015) (concluding that conservative treatment lends little support to claims of debilitating symptoms), *adopted by* 2015 WL 5737613 (E.D.N.C. Sept. 30, 2015). Accordingly, the ALJ appropriately relied on Claimant's lack of inpatient psychiatric treatment as a factor in explaining the rationale underlying his RFC formulation.

Second, Claimant contends that the ALJ criticized alleged treatment noncompliance and "cherry-picked" evidence with little explanation. Pl.'s Mem. [DE-25] at 16. The ALJ noted that Claimant did not always take her medication as prescribed, and he cited a 2012 record. (R. 40). Claimant was instructed to take one tablet of Paxil and Wellbutrin daily, but she took those medications twice per day. (R. 508). An ALJ may appropriately discount a claimant's testimony

"if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." S.S.R. 96-7p, 1996 WL 374186, at \*7 (July 2, 1996). Here, however, Claimant did not take less medication than was prescribed; rather, she took two doses daily instead of one. The fact that Claimant took *more* antidepressant medication than was prescribed, and not less, does not undercut the severity of her alleged symptoms. If anything, it may imply that her symptoms were more severe and could not be managed with prescribed medication. Accordingly, the ALJ's observation that Claimant was noncompliant with her medications does not lend support to his conclusion that her testimony was not fully consistent with the medical and other evidence. If the ALJ wishes to rely on Claimant's noncompliance in his formulation of the RFC, the issue should receive additional discussion on remand.

Third, Claimant contends that the ALJ considered the types of activities Claimant performed but not the extent to which she performed them. Pl.'s Mem. [DE-25] at 16–17. If that were the case, it would be error. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (finding error when the ALJ stated that the claimant could "maintain her personal hygiene, cook, [and] perform light household chores" but did not consider the claimant's testimony that she has trouble dressing and bathing, she can only prepare simple meals, it takes her longer than normal to do laundry and shop, and she sometimes "spends the entire day on the couch"); *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 263 (4th Cir. 2017). However, it appears that the ALJ did consider the extent to which Claimant performs her activities. The ALJ's discussion on page forty of the record is merely a summary of the ALJ's rationale, and further details are found throughout the decision. The ALJ noted that Claimant was able to care for her young daughter, and earlier in the decision, the ALJ specified the extent to which Claimant did so: she cared for her daughter from 3:30 p.m.

19

to midnight while her husband was working, and during that time, she fed her daughter, read to her, and changed her diapers. (R. 26, 40). The ALJ also noted that Claimant could carry her daughter when she weighed fourteen pounds but had difficulty lifting her when she was forty pounds. (R. 40). The ALJ stated that Claimant could take walks with her dogs, and the ALJ specified the extent of that activity—Claimant reported taking those walks daily. *Id.* Likewise, the ALJ noted that Claimant exercised on an elliptical, and the ALJ specified that Claimant did so for fifteen to twenty minutes a day. *Id.* The ALJ noted that Claimant can drive, and she went outside a few times a week, would leave the house more days than she did not, and would not go out twelve days a month. (R. 26, 40). The ALJ wrote that Claimant once reported she was taking care of her grandmother, and that appears to be the only activity for which the ALJ noted the type but not the extent to which Claimant performed it. (R. 40). In summary, it is not likely the ALJ committed harmful error by noting the type but not the extent to which Claimant performs certain activities.

In summary, Claimant raised three issues with the ALJ's RFC assessment: the ALJ noted Claimant's lack of inpatient psychiatric care, the ALJ found that Claimant did not always take her medication as prescribed, and the ALJ considered the types of Claimant's daily activities but not the extent to which she performs them. Pl.'s Mem. [DE-25] at 15–19. First, the ALJ did not err in noting Claimant's lack of inpatient care because a conservative course of treatment can inform whether a claimant's impairments are as limiting as she alleges. Second, the ALJ ought to give greater attention to Claimant's noncompliance with medication on remand; Claimant took more medication than was prescribed, not less, so it is not clear that her noncompliance undermines her credibility. Third, it appears that the ALJ largely did consider the extent to which Claimant performs her daily activities. Nonetheless, the case is remanded because the ALJ erred in weighing

20

the medical opinions.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-24] is ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-26] is DENIED, and this matter is REMANDED to the Commissioner, pursuant to sentence four/six of § 405(g), for further proceedings consistent with this Order.

So ordered, the 8th day of July, 2019.

Robert B. Jones, Jr.
United States Magistrate Judge